PETERS, by Guardian *ad litem,* and another, Appellants, vs. ZIMMERMAN, Respondent.

*February 4—March 5, 1957.*

168

For the appellants there were briefs by *Reiland & Schmidt* of Wisconsin Rapids, and oral argument by *Donald E. Reiland.*

For the respondent there was a brief by *Graves, Chambers & Nash* of Wisconsin Rapids, and oral argument by *Lawrence R. Nash.*

FAIRCHILD, J. Respondent requests a review of the court's denial of judgment in his favor notwithstanding the verdict and its denial of his motion to amend the verdict and grant judgment thereon as amended. Respondent's position is that there was no proof of any causal connection between the jolt which occurred when Gerald was riding on the combine and the Perthes disease which he later suffered. There is no dispute but that Gerald did receive a blow while riding on the combine and there is also no dispute as to his later being afflicted with Perthes disease and suffering substantial pain and disability. The testimony of Dr. Mittelstadt

tends to support the proposition that the injury caused the disease while the testimony of Dr. Mason and Dr. Jones tends to refute that proposition. Dr. Mittelstadt has osteopathic training and postgraduate study. He is licensed to practice medicine and surgery and had practiced in Marshfield for seventeen years at the time of the trial. He had treated cases of Perthes disease and testified that during sixteen years he had at least two or three cases all the time. He testified that Perthes disease is a breakdown of the head of the femur in the hip joint; that it usually occurs only in growing children between the ages of two and fifteen years; that "I have never seen a case of Perthes disease that wasn't due to injury;" that in his own opinion the Perthes disease suffered by Gerald was due to injury; that assuming that the injury on July 30th was the only injury Gerald sustained that summer, such injury caused Gerald's condition. Dr. Mittelstadt acknowledged that he knew that in the medical profession there is a difference of opinion to a certain extent as to what causes Perthes disease.

Dr. Mason is a doctor of medicine specializing in traumatic and orthopedic surgery, practicing at Marshfield. He testified that "My opinion is that no single injury can produce Perthes disease;" that the vast majority of cases occur in children between three and ten. The disease occurs mainly in males and there are known cases of inherited tendencies to the disease; that in the vast majority of the cases there is no history of antecedent injury; that to date there is no known cause of this condition; that from his experience it would be almost impossible to explain the stages of the disease over a period of years on the basis of one single blow or injury; that because there is no good answer to the question as to the cause of Perthes disease the possibility that injury can be the cause has to be considered. When asked whether there are many medical authorities that do feel that

injury is the cause and contributing factor, he testified, "I would say there are not many."

Dr. Jones is a doctor of medicine specializing in traumatic surgery. He has practiced since 1917 and has taught traumatic surgery at the University of Wisconsin Medical School for about ten years. He testified that Perthes disease is not due to trauma; that he has treated cases of it where there is no history of trauma; that the disease which is called Perthes disease in the hip joint may occur wherever there is a growing line in bone; that it is frequently bilateral; sometimes runs in families; that metabolic disturbances may be a contributing cause and that the disease might be due to disarrangements in ductless glands. When asked whether a majority of authors on the subject do consider trauma as a probable originating factor, he testified that he did not think that the majority believed that. When asked if a lot of the authors do believe that a severe blow is the most likely cause, he testified, "There is a theory of trauma connected with Perthes disease. Some doctors feel as though it is due to trauma." There is here a difference of opinion between qualified experts, and the jury has resolved the issue. It follows that the court committed no error in refusing to make a finding on this issue as a matter of law.

The court's order for a new trial cannot be given effect as being in the interest of justice because the reasons that prompted the court to make such order are not set forth in detail therein. The detailed statement of reasons is required by sec. 270.49 (2), Stats. *Dowd v. Palmer,* 245 Wis. 593, 596, 15 N. W. (2d) 809; *Buetow v. Hietpas,* 253 Wis. 64, 33 N. W. (2d) 201; *Bradle v. Juuti,* 257 Wis. 523, 44 N. W. (2d) 242. Even if sufficient reasons were stated in a memorandum decision, there must be incorporation into the order by a specific reference before there is compliance with the statute. *Guptill v. Roemer,* 269 Wis. 12, on rehearing, page 20a, 68 N. W. (2d) 579, 69 N. W. (2d) 571.

The order for a new trial was also based on the inconsistency of two answers, one of which found that Zimmerman's negligence in permitting Gerald to ride was a cause of the accident and Leon's negligence in the same respect was not a cause. We do not view these answers as inconsistent. It is quite reasonable to find that the father's negligence was not a cause of the accident in the afternoon. Both men were exercising some degree of control over the situation in the morning, but the jury could properly and evidently did consider that the father's negligence was not operative in the afternoon when the uncle had complete control.

The other ground assigned for a new trial was that the answers to the special damage questions were not supported by the evidence. In answer to question 7A, hospital, doctor, and medical expenses to date were found to be $1,000. Counsel had agreed that hospital and doctor bills totaled $812.50. There was also testimony of repeated purchases of medicines. Except, however, for a receipt for $6.50, the proof of the cost of medicine was indefinite.

In answer to question 7B, future medical expenses were found to be $150. The only supporting testimony was that of Dr. Mittelstadt. He estimated future expenses as between $75 and $100, including medication, but excluding taking and reviewing X rays.

We are satisfied in view of the evidence that there was some indefinite amount of expense for medicine over and above $819 and in view of the fact that Dr. Mittelstadt's estimate did include some indefinite amount of expense for future X rays, the jury's action in giving answers which were somewhat in excess of the amounts proved was not evidence of perversity. "To be such a [perverse] verdict, there must be something to warrant a finding that considerations ulterior to a reasonably fair application of the judgment of the jury to the evidence, under the instruction by the court,

have controlled the jury." *Brown v. Montgomery Ward & Co.* 221 Wis. 628, 631, 267 N. W. 292. Clearly the evidence would support $819 as the answer to question 7A and $100 as the answer to 7B. In view of the relatively slight difference between these and the highest figures that could possibly be sustained the matter should be disposed of by changing the answers to these sums.

Respondent asserts that the court should not have found him negligent as to speed because in fact the tractor was moving slowly. It is clear, however, from the testimony of the respondent himself that even this slow speed was too fast under the circumstances. Respondent indicated that if he had had the rut in mind, the safety both of his equipment and of Gerald would have required that the speed be reduced.

Respondent also claims that the court erred in the manner in which he submitted the issue as to the causal relation between the injury and Gerald's Perthes disease. Respondent requested submission of a direct question whether the Perthes disease was caused by the injury. The court did not submit that question separately but considered that the jury would necessarily answer that question in answering the three questions as to the amount of damages resulting from the accident. The court did instruct the jury with reference to the damage questions that before it could include the damages suffered as a result of the Perthes disease the burden of proof was upon plaintiffs to show that the disease was caused by an injury that Gerald sustained while riding on the combine; that the jury must be satisfied to a reasonable certainty not only that an injury may cause Perthes disease but that the injury sustained by Gerald did in fact cause and produce the disease before the damages resulting from such disease could be included in the answers. There was no error in submitting the issue as to the causal relationship between the accident and the disease as an incident to the damage question, clear instructions having been given as above outlined.

*By the Court.*—Order reversed, cause remanded with instructions to change the answers on special damages as prescribed in the opinion and to enter judgment in favor of plaintiffs upon the verdict as so amended.